We will hear from Ms. Dixon. Thank you, Your Honor. Good morning and may it please the Court, Courtney Dixon for the United States. The contracts in this case were explicitly and exclusively set aside for service-disabled, veteran-owned small businesses. Nevertheless, the defendants here fraudulently represented their eligibility and induced the government to award them over $20 million in contracts that, but for the defendant's fraud, they never could have obtained. The District Court committed two principal errors in dismissing the government's complaint. First, the District Court erred in holding that it was not material to the government's payment decision that the defendants lied about their eligibility to receive these set aside contracts in the first place. And second, and building on that error, the District Court erred in holding that the complaint did not adequately allege the defendants knowingly made material false misrepresentations to the government. The complaint contained more than adequate allegations on both counts and the District Court's opinion should be reversed. Just to start briefly with materiality, Your Honors, in this fraudulent inducement case, materiality should be assessed with respect to the statement that caused the government to enter into these contractual relationships. And here, as discussed, the defendants fraudulently misrepresented their status to meet a core eligibility requirement for these contracts. The complaint alleges that had the contracting officers in this case known that VICO was not eligible for these contracts, it would not have awarded VICO a dime of these contracts. Each of the factors that the Supreme Court identified in Escobar as relevant to materiality inquiry supports the government's allegations of materiality here. It was an explicit condition on the government's agreement to contract, it went to the essence of the bargain, and the government has gone after both civilly and criminally firms that have misrepresented their status. The complaint clearly alleges that the defendants' misrepresentations were material in this case and contained allegations that the defendants knew of that materiality and knew that they were making false statements to the government. Judge Calabresi? Yes. My main question has to do with Goldie. That is, I'm fairly, I understand your argument with respect to Strock and then with respect to the company, but I'm concerned about whether there are any claims against Goldie that meet 9B specificity requirements. That is, the complaint keeps saying all defendants did this, including Goldie, and it doesn't specify which, I mean, defendants, including Goldie, did this. Now, it might be that that means that every defendant, including hers, that the only situations where that is alleged are where it's boilerplate, not specific at all. In any specific situation, it's pretty clear that it isn't saying that everyone, it's just saying some, and so I wonder whether, with respect to her, 9B is missed. The complaint does contain specific allegations with respect to Ms. Goldie's role in this, and I'm happy to go through those specific allegations. I mean, the complaint alleges that Ms. Goldie was the office manager at VECO and that she was in charge of presenting the paperwork to Mr. Anderson for him to sign, paperwork that Mr. Anderson didn't otherwise have access to, and indeed, he didn't even have access to the building. Ms. Anderson, or sorry, excuse me, Ms. Goldie or other employees would have to let him in. The complaint also alleges that Ms. Goldie was in charge of the master email account for VECO, an email account that Mr. Anderson did not have access to. Is there even, counsel, is there even a specific allegation that Goldie knew the requirements of this particular program? You know, it may well be, but I wonder, given the requirements of 9B, whether the claims against her are specific enough. Well, just to start out with respect to knowledge, of course, under the SBA, actual knowledge is one type of knowledge, but there's also deliberate indifference and reckless disregard. And at a minimum, the complaint alleges that Ms. Goldie was reckless in disregarding the eligibility requirements because the complaint alleges that she was submitting bids on behalf of VECO, and each bid necessarily represented VECO's eligibility for the set-aside contracts. The complaint also alleges that Ms. Goldie was submitting invoices for payment under these contracts, and each of these invoices stated that they were done in compliance with the terms and conditions of the contract, and the contract themselves included the specifications of eligibility for service, that they were service-disabled, veteran-owned small businesses, Your Honor. And so if Ms. Goldie was making these bids and certifications and submitting invoices, and yet, as she says, she has no knowledge of the eligibility requirements, again, at a minimum, Your Honor, that plausibly alleges reckless disregard. And we're at the complaint stage, Your Honor. It may well be the case that Ms. Goldie, at summary judgment or at trial, will introduce evidence to show that she didn't have the requisites to enter or that she wasn't involved in this scheme. But the complaint plausibly alleges, with particularity, the role that Ms. Goldie played in making it appear that Mr. Anderson was in charge of this firm, and then submitting bids and invoices for these contracts that she knew or recklessly disregarded that VICO was not eligible for. Thank you. This is Judge Katzman. Judge Calabresi asked my – covered my principal concern. I wanted, though, to ask you, if I could, about the materiality inquiry. In light of Escobar, Escobar concentrates the materiality inquiry on whether the government pays or refuses to pay non-qualified contractors. But as I look at your complaint, I don't find, and correct me where I'm missing something, where the complaint alleges even a single instance in this or any other case where the government has stopped payments or canceled contracts upon learning that a contractor was not a true SDVOSB. You do cite some after-the-fact lawsuits, but arguably that's not what Escobar is really concerned about. Why doesn't that demonstrate that you haven't pleaded materiality? So, two important points there, Your Honor. First, Escobar identified the government's actions in the face of actual knowledge of fraud as one factor in the materiality inquiry. The other factors the court identified, of course, were whether something is an explicit condition or whether it goes to the essence of the bargain. And Escobar made clear that those factors are part of a holistic inquiry, no one of which is dispositive, and those factors are also not exhaustive. So I think it's important, Your Honor, that the government's actions in the face of actual knowledge of fraud is just one factor among many. And that leads into my second point, which is that if this factor is absent, that doesn't necessarily mean that something is material. And particularly on a motion to dismiss, where instances have to be taken in the government's complaint. And several court of appeals following Escobar have recognized that. So that's the Sixth Circuit opinion in Prather, Your Honor. The complaint contained no allegations about the government's actions with respect to other violators, and yet the Sixth Circuit said there were other allegations present of materiality, and that wasn't a reason to dismiss the complaint. The First Circuit Honor Man from Escobar itself recognized something similarly. I think I might be out of my two minutes, Your Honor, but I would like to finish your question, if I may. Yes, and then Judge Carney will ask you some questions. Thank you, Your Honor. And just to get to maybe the heart of your question about the complaint here, the complaint alleges that the government has taken enforcement action, both civilly and criminally, against firms that misrepresent their status as services they were better endowed in small businesses. And the complaint contained allegations that the specific contracting officers in this case, one, would not have awarded the contract at all to VECO had they known that VECO was ineligible. And of course, that's quite relevant in this fraudulent inducement case. But the complaint also alleges that had the contracting officers learned of VECO's fraud after the contract had been entered into, they would have taken steps to potentially terminate the contract or suspend payment on the contract. Those allegations recognize just the reality that once the contract has been entered into, there are other factors at play, both legal and practical, with just terminating a contract and stopping payment. But the complaint certainly alleges that it would have been material to the contracting officer's decision and that it would have a natural tendency or was capable of influencing their decision. So one, Your Honor, I think to answer your question, the complaint here does contain allegations that go to that point. But second, even if it didn't, given the other indicia of materiality here, that wouldn't be a reason to dismiss the complaint. And it would be contrary to Escobar, which again, made clear that no one factor is dispositive in this inquiry. Thank you, Judge Carney. Thank you very much. If I could follow up on Judge Katzman's questions about materiality. In looking at Escobar, I was struck by Justice Thomas's focus on the specific representations about the goods or services provided. And I wondered if you could tell me about the goods or services provided here. Was construction work done? I believe that there was construction work performed, Your Honor. The complaint alleges with respect to several contracts, it goes into the actual specifics of what the actual project was. I believe there were some projects related to construction of government buildings. But my question is, it adheres to me from the contract that the there was no quality issue, and tell me if I'm wrong, and that the government didn't object to price. And therefore, the only thing that was incorrect here, in your view and fraudulent, the government's view was that the certification with regard to the status of the contractor was inaccurate. Am I correct in that? Or it was there possibly some price implication based on its participation in the set-aside program, which maybe didn't have a full competitive bidding process? You know, again, I'm looking for I mean, I understand that if you say this is fraud in the inducement, they wouldn't have contracted with this company absent the certification. But I'm also looking because the many cases in which you've cited, it seemed to me that there was an impact of the certification on the quality of goods or price of the goods that were then delivered. And I did not see that in your allegations here. Could you help me understand whether it's the certification just by itself that you claim was essential, and therefore a basis for a False Claims Act action such as you've brought? Or did it have other implications for the goods and services that were delivered? You know, the bottom line is that the government didn't get what it wanted, because of defendants fraud, which is that Congress has specifically authorized federal agencies to set aside contracts for service disabled veteran-owned small business firms, in order to provide those firms with experience and that they might not otherwise obtain. And this goal was so important to Congress, that it specified that a certain percentage of all government contracts have to be set aside. I understand that. I understand that. But I'd like you to just answer and focus on my question about the actual goods or services delivered. And I'm attempting to direct my answer to that, Your Honor, which is that, you know, in other cases, it might be that the actual, you know, price of the good or service affected versus here, it's something that's more qualitative. But there are fraudulent inducement cases that recognize that those things can also go to the benefit of the bargain. And here, where the government has specified something that is important to it, so much so that the government cannot give these contracts to a firm that doesn't meet these requirements, a firm that represents it, misrepresents its status and induces the government to award it, has made a false claim to the government that was material to its payment decision. And so what is your strongest case for that? To me, maybe the Fifth Circuit case in which the SBIR program was implicated, but the others all seem to have an impact on the quality of the goods or services. Am I mistaken? Tell me actually, just tell me what's the strongest case for a pure fraud in the inducement by virtue of a misstatement of the qualification of the vendor? In the Feldman case, this court noted that the government can specify the conditions that it wants in entering a contract. And there were fraudulent statements and grant renewals, and the court recognized that because of the inducement... But in Feldman, that had to do with the quality of the services that were delivered and with the faculty that supervising the grant or not, whether the work that was supposed to be done was or was not being done. And so I believe that that is distinguishable on the fact. But I've taken you well past your time and kept you over the time allotted to me. So I defer to the chief here. If you want to, please proceed further, Judge Carney, if you have anything else you want to ask. That's fine. Okay. All right. Thank you, Ms. Dixon. You'll have two minutes for rebuttal. We'll now hear from Robert Singer. And good morning, judges, and may it please the court. For many years before and after Escobar, the government... Excuse me. Excuse me, Mr. Singer. Whom are you representing? I'm representing... Yes, Judge Calabresi. I'm representing Strzok Contracting and Mr. Strzok. Thank you. And judges, for many years before and after Escobar, the government attempted to expand the scope and reach of the False Claims Act. And this case is no different. In here, the government asks you to essentially remove any materiality analysis. But as we know from Escobar and what the Supreme Court stated and what this court stated in Bishop V. Wells Fargo, that should not be done. There are limits. Fraudulent inducement, which is the newest theory in the First Amendment complaint, requires materiality analysis. And Judge Geraci, in the court below, in his 2018 decision, and a little less in his 2019 decision on dismissal, discussed that at length about how Bishop II, the Second Circuit stated that material analysis is required. And it's something that's important because it puts limits on the SCA. Just like the Supreme Court stated in various cases post-Escobar that other courts have stated, material analysis must be in some ways limited, and that's a limiting factor in that strict materiality analysis. When you look at materiality in this case, and I think some of the judges, all of you, pinpointed some of those problems that the government has in this First Amendment complaint. The essence of the bargain in this case was a construction contract. And in answer to your question, Judge Carney, all the buildings were government paid on every single one of the payment applications submitted by VICO. And there were no problems because the government continued to do change orders later on. And that indicates that the work was sufficient. And it's a different case from Feldman as a result of that. The bargain in this case, or why the SDVSOB status is not significant, and is instead minor and substantial, we believe just goes to some of the facts. As Judge Geraci put forward, and the government conceded in its brief, there is no allegation in the First Amendment complaint that payment is conditioned on compliance with those regulations. And that's something that's critically important. It separates the case from cases cited in the government's brief, like Marsteller, the mail-in, where FCAA viability cannot just reach everywhere. It has to be limited. And I think the government's action in these cases really paints the picture. One of the things that we wanted to attack in our responses was the reality that the government put forward in their case about what actually existed. And we don't believe it properly paints a picture of what actually existed, the groundscape, as we put forward in our brief. Judge Calabresi? Yes, I have one question. You argue that the government has not brought this kind of charges in other cases. But isn't that evidence that you put in on that improper under 12b-6? 12b-6 must be judged on the complaint and what it says. And when you bring in evidence that they didn't do that, it might be appropriate for summary judgment, might be appropriate to defend and get summary judgment then. But isn't it, and the district court relied on such evidence, isn't that manifestly erroneous under 12b-6? We do not believe it is, Judge Calabresi, and it's for these reasons. First off, as you are aware, judicial notice can be used to take notice of these facts. And we believe it's appropriate to consider some of the authorities that we brought forward. Because as the government quoted various FOIA IG reports inside of this First Amendment complaint, we believe that it's important to consider... No, no, excuse me, excuse me. Judicial notice can be taken of decisions of cases, but how can we take judicial notice of something like whether there were other cases brought? That isn't something that is a case or on the record, is it? What I'd say to that, Judge, is that, again, because the government brought forward in their First Amendment complaint these various OIG reports and made allegations about what the brought forward are integral to that First Amendment complaint. And that's something that you can consider and the district court can consider on a motion to dismiss under 12b-6. These are integral because they paint the picture of reality. And I think it's important because one of the things that the government tried to do here is say, well, we held every single firm accountable. We canceled every contract. Violating firms were debarred. That did not happen in 2012 in every case. And that's why we believe it's important to consider those authorities. Thank you, counsel. You've answered my question. Thank you. Thank you, Judge Katzman. This is a program that explicitly identifies certain contracts for STVOSBs. So in a situation where a company lies about being an STVOSB, how can that not be material? Judge, what I would say to that is that while it may be material in some ways, it does not end the analysis. I think what the government has tried to do in their brief is say that that ends the analysis right there. But I believe what Escobar says and what Bishop Too says in this court is that materiality must consider various factors, including payment. And that's why Judge Geraci considered payment as one of those factors, because the payment here is important. It's shows that the government was not following through on what it believed was really important. If they truly believed that VICO was a sham entity, they wouldn't have allowed it to reapply. They would have canceled the contracts, like they said. But inside the allegations and the complaint, all they talk about is what the government may do or might have done. And Judge, that's not enough. It must be black and white. It must be explicit. And that's where materiality analysis in this situation fails, because it wasn't that case with other firms. Well, let's look at knowledge. I mean, the fact that your client made these representations suggests that he realized they were material. I mean, why would he fabricate? Why would he lie about VICO being an SDVOSB if he thought the government wouldn't care one way or the other? Well, I think with regard to knowledge, Judge, it's also important to take a look at things that would put Mr. Strzok or SCI on notice about those things. I realize the allegations in the complaint say that Mr. Strzok believed this or did this. There's not a lot of information about who submitted these bits, and there's not specific allegations about that inside the complaint. And furthermore, as far as knowledge is concerned, this is not a case like the Miller case, the Weston education, or U.S. v. Hodge, where VICO was told to stop, or there were statements that were smoking guns or other things that showed knowledge. In this situation, the government's knowledge reliance is just on simply that, well, we held a firm accountable in 2017 in some bases, which is seven years after contract formation, which is seven years after most of these contracts were completed. That doesn't show knowledge, even if it's under an actual, a deliberate or ignorance, or a reckless disregard for the actuality of truth. And that's what's important. These enforcement actions the government points to, they happen years after, and that doesn't demonstrate that the defendants in this case had knowledge. Am I correct, sir, in understanding that when a contractor participates in a set-aside program like this, the competition for the jobs is reduced, because then there are just, there are fewer qualifying entities, and the ordinary bid procurement, you know, competitive bidding process is avoided, and therefore bids can be higher. And so the government potentially, in addition to the set-asides, it also can have a price impact. Is that incorrect? Judge, you're correct that in a set-aside issue, the bidding is limited to firms. I don't believe that it would be accurate to state that as a result of having limited bidding, there's an impact on pricing. Because again, the contracting officers who receive these bids are looking at them, and while there's a service to be delivered to the government in a building, they're not going to accept the bid if it goes out of budget beyond what is allocated for funding for that particular project. So I don't believe it has an impact on pricing. I know that you had raised that issue when the government was talking, and I think it's important. This is not a pricing issue like that Marsteller case, because there wasn't some type of bid rigging done so that VECO could obtain a higher price on the goods that they are providing. And there were goods and services that were provided. There were construction projects that were completed to the specifications of the government, to the satisfaction of the government. That's why VECO is paid. So I don't believe it's the same case, no. Okay, thank you. Thank you. We will now hear from Ritu Parna Dutta. Good morning, Your Honors. This is Ritu Parna Dutta. I'm the attorney for... Dutta, thank you. It was close, Judge. I'm the attorney for Cynthia Goldie in this case. I'd like to start off with our 9B argument. As Judge Calabresi noted, there are very few allegations that the government has made suggesting that Ms. Goldie had the requisite knowledge to be liable under the false claims. And I think the crux of the government's argument really comes down to its allegation that she submitted bids and invoices on behalf of VECO for SDVOS contracts pursuant to the direction of Lee Strock and Ken Carter, who were both owners of the company. And I think there's a couple things that are... that's wrong with this argument. So first, the allegations in the complaint are that Ms. Goldie submitted these bids and invoices, but in different times in the government's principle and reply brief, it alleges that she certified VECO's compliance and that she certified VECO's status. And I think that's a very important distinction. And the way that I think about it is that when I submit a brief, and when I submitted a brief in this case, I signed that brief. It was my brief. I'm responsible for what's in there. I'm responsible for the legal arguments that I'm making. But I don't have the foggiest idea of how to go about submitting a brief to this court or any others, which is why I rely on my assistant or a printer. But that doesn't make them responsible for it. That doesn't make them responsible for making sure that what I've said is accurate and that my legal arguments are sound. That's not their job. They're not responsible for that. They're not paid for that. That's as much as the government has alleged against Ms. Goldie, that she submitted bids at the direction of her bosses, the owners of VECO. And that is a far cry from having her personally certify anything about VECO. So second, the argument that the government relies on mainly to satisfy 9B is made upon information and belief. Upon information and belief, Lee Strzok and Ken Carter caused Cynthia Goldie to submit these bids and invoices. Now, this is an improper use of information and belief pleading as this court has held and encorches. First of all- Judge Calabresi? Yes. My only question goes to whether there is enough of someone in your client's position really went out of her way not to look. And whether that is enough to get by, even under 9B, the initial 12B-6 vote, you'd need a lot more than that to get by summary judgment. Your Honor, respectfully, I don't think it is. Ms. Goldie's presentation this morning that she accused Ms. Goldie of helping to cover up Mr. Anderson's lack of involvement in the company by presenting paperwork to him. I don't see how an office manager presenting paperwork to the majority owner of a company is evidence of a cover-up. And I think- You don't think that the fact that she had to give the key to somebody who was supposedly the 51% owner to put somebody on guard that something peculiar was going on? Well, Your Honor, the way the government pleads that allegation is that Mr. Anderson didn't have a key and Ms. Goldie or other employees would have to let him into the office. What's interesting is that the government doesn't say that anyone else had a key. Did Ms. Goldie have a key? Did other employees have a key? So you're saying that that, which would be quite specific, doesn't say it was Ms. Goldie and therefore doesn't meet 9B? That's correct, Your Honor. There's a number of similar allegations in the complaint where the government alleges that Ms. Goldie or others may have done something wrong, including the submission in 2008 to the VA to have VICO recognized as an SCVOSB. And I think that's basically saying- That's basically trying to cast suspicion on Ms. Goldie when the government doesn't actually know if she did anything. It was either her or anybody else. Thank you, counsel. Thank you, Your Honor. This is Judge Kasman. I just have one question. You indicate that only the client is attributable, but one falsehood is sufficient for a False Claims Act liability. Why shouldn't we, on that basis, uphold the complaint? Because, Your Honor, the one invoice that she submitted contained a generic certification stating that the contract wasn't performed within the terms and conditions of the contract. It didn't say anything about control and that's really what this case is about. The government is claiming that Mr. Anderson didn't control VICO and therefore it was not a legitimate SCVOSB. But there is no evidence to suggest that Ms. Goldie, who is, according to the government, an office manager, knew what those regulations were. She's not alleged to be a lawyer. She's not alleged to be someone who has experience in the government contracting industry. She's not even alleged to have experience in contracting generally. So she's submitting an invoice saying that, yes, we performed in accordance with the terms of the contract. That doesn't put her on notice that it's false. It has nothing to do with control. There's no representation in that invoice regarding control. And again, Your Honor, coming back to my assistant submitting a brief, it doesn't mean that she's going to be familiar with all the legal arguments that are in my brief. She's very surprised to believe that that was the case and very surprised that she could be held liable for it if it's incorrect. Thank you. Judge Carney? I have nothing further. Thank you. Ms. Dixon, you'll have two minutes. Thank you, Your Honor. Just two quick points. First, on the last discussion with Ms. Goldie, the complaint alleges far more than Ms. Goldie's counsel implies, given that, again, not only was Ms. Goldie the one submitting bids and invoices, which, again, contain certifications and the complaint contained allegations to that respect, but also the complaint alleges she was playing a role in this scheme and making it appear that Mr. Anderson was in charge of the firm, including controlling a master email account to which Mr. Anderson did not have access to. And at a minimum, taking reasonable inferences in the government's favor, as the court must on a motion to dismiss, it's at least enough to with at a minimum reckless disregard of the standards. To get to some other points that were raised, and perhaps to go back to this essence of the bargain question, if the government simply wanted to construct a government building, Your Honor, it would have gone through the normal contracting process through which the government has to solicit bids to spare an open opportunity for all comers. But instead, the government utilized a specific process to set aside contracts for service-disabled veteran-owned small businesses, and that's to provide contracting opportunities and experiences to this business, as I discussed earlier. The government didn't get that, and because of defendants' fraud, someone who would have been an eligible business necessarily lost out on that opportunity. And Judge Carney, you had asked about cases, and we had discussed- You have one minute left. Thank you. Judge Carney, you had asked for cases, and we had discussed Feldman, but I also wanted to point out the Seventh Circuit's opinion in Luce. That's after Escobar, and it involves someone who misrepresented their eligibility for a core requirement to participate in the program, and the Seventh Circuit there found that material. I'll also emphasize in Escobar itself, Your Honor, the court there rejected the argument that something had to be an explicit condition of payment in order to be material in that implied certification case, because the Supreme Court noted that that would arbitrarily limit FDA liability to someone who misrepresented their eligibility to even participate in a government program in the first place. And that's, of course, exactly what we have here. The complaint alleges that this was material to the government. The defendants knew that it was material, and indeed, their own role in trying to make it appear that they satisfied these requirements demonstrates their knowledge and materiality. I'm happy to answer any other questions that the court has. Otherwise, we ask that you reverse this report. Thanks to all for your arguments. Well argued. The court will reserve decision. The clerk will adjourn court as the other cases are on submission. Court stands adjourned.